IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d) | MAGISTRATE NO. 16-1117<br><br>**UNDER SEAL** |

## APPLICATION OF THE UNITED STATES
## FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)

The United States of America, moving by and through its undersigned counsel, respectfully submits under seal this *ex parte* application for an Order pursuant to 18 U.S.C. § 2703(d). The proposed Order would require **AT&T Wireless**, a cellular service provider, to disclose certain records and other information pertaining to the cellular telephone number **412-628-5975**, as described in Part I of Attachment A. The records and other information to be disclosed are described in Part II of Attachment A to the proposed Order. In support of this application, the United States asserts:

### LEGAL BACKGROUND

**AT&T Wireless** is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15). Accordingly, the United States may use a court order issued under § 2703(d) to require **AT&T Wireless** to disclose the items described in Part II of Attachment A. *See* 18 U.S.C. § 2703(c)(2) (Part II.A of Attachment A); 18 U.S.C. § 2703(c)(1) (Part II.B of Attachment A).

This Court has jurisdiction to issue the proposed Order because it is "a court of competent jurisdiction," as defined in 18 U.S.C. § 2711. *See* 18 U.S.C. § 2703(d). Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

1

A court order under § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

## THE RELEVANT FACTS

From November 25, 2015 through November 8, 2016, at least seven bank robberies have occurred that investigators feel can be attributed to the same robber. This is believed due to many commonalities in the way the robberies were committed and physical attributes of the robber. All of these robberies were committed by a white male believed to be in his 40's-50's, approximately 5'06" tall with a slender build, who I believe to be Gregory MAGEE for the reasons cited herein.

During three of the robberies a gun was utilized which investigators believe to be the same gun; during three of the robberies, an umbrella was used in an attempt to defeat surveillance cameras. In all of the robberies, multiple teller stations were robbed and in four of the robberies, the robber distributed a plastic, grocery type bag, to each individual teller to collect the money. Based on the experience of Task Force Officer Conor Mullen of the Federal Bureau of Investigation, who has investigated approximately 200 bank robberies, I believe the issuing of individual bags to each teller is unique. One of the Cadillacs had black rims and the other had silver rims. In all of the robberies, the robber parks his getaway car behind an adjacent building located in close proximity to the bank.

The following is a list of robberies believed to be committed by MAGEE. Investigators have received the following information through interviews of bank employees, eye witnesses and

other law enforcement entities, surveillance videos and observations by TFO Mullen when reporting to each robbery location.

On January 20, 2016, the First Niagara Bank located in Cranberry, PA was robbed by a lone white male utilizing a small black semi-automatic firearm. The robber entered the bank with the firearm already exposed, approached the teller stations and demanded money from each teller. The money was collected by the robber from each teller and it was placed in a black bag. The robber then exited the bank and ran behind a Giant Eagle grocery store that was near the bank. No getaway vehicle was observed. The robber was described as having a red scarf, concealing the lower portion of his face.

On February 29, 2016, the First Merit Bank located in Union Twp., Lawrence County, PA, was robbed by a lone white male utilizing a gun. The robber entered the bank with the firearm already exposed and approached the teller stations. The robber demanded money from the tellers and gave each teller a plastic, grocery type bag for collection of the money. He specifically demanded that the tellers give him money from both the top and bottom cash drawers. Two tellers supplied the robber with "Dye Packs", which exploded shortly after the robber exited the bank. The robber was observed running behind a warehouse close to the bank. Surveillance cameras from the warehouse captured the robber entering a newer black, Cadillac ATS with black after market rims. The robber was described as wearing a red scarf, concealing the lower portion of the robbers face. It is believed the firearm used in this bank robbery is the same as the firearm used in the robbery on February 29, 2016.

On March 31, 2016, the First Niagara Bank in Peters Twp. PA, was robbed by a lone white male utilizing an umbrella in an attempt to conceal his identity. The robber entered the bank with the umbrella open and approached the teller stations demanding money. The robber stated that he

had a gun and supplied each teller with a plastic, grocery type bag, for them to place the money in. Upon collecting the bags from the tellers, the robber exited the bank and ran behind an adjacent business where he got into a newer black, Cadillac ATS with chrome rims. Following this bank robbery, FBI released to media the photos of the robber and photos of the two Cadillacs from the robberies on February 29, 2016 and March 31, 2016.

On June 8, 2016, the First Commonwealth Bank located on Forbes Ave. in the City of Pittsburgh, was robbed by a lone white male who utilized an umbrella, in an attempt to conceal his identity. The robber entered the bank with the umbrella open and approached the teller stations where he made an oral demand for money. The robber threatened that he had a firearm and supplied each teller with a plastic, grocery style bag, for them to place the money in. The robber then demanded that the manager open the bank vault, to which the manager replied that he couldn't because the vault was on a timer. The robber collected the bags from the teller and exited the bank. The robber was observed running behind the bank where he climbed a wall and ran into a parking lot adjacent to the bank. No getaway vehicle was observed.

On August 11, 2016, the Citizens Bank in Chippewa, Beaver County, PA, was robbed by a lone white male who threatened bank employees that he had a bomb. The robber made an oral demand for money from the tellers and supplied each one with a plastic, grocery style bag, for the tellers to place the money in. The robber then went to a bank employee sitting at a desk, gave the employee a plastic, grocery style and demanded that the employee retrieve money from the bank vault. The employee went to a nearby desk and extracted money, placing it the bag. The employee did not enter the vault. The robber then collected the bags of money from the bank employees and exited the bank, running behind a nearby church. An eye witness reported seeing the robber get

into a dark colored Buick sedan. A hat the robber used during the commission of the robbery was recovered by investigators.

On November 8, 2016, the S & T Bank located in Monroeville, PA, was robbed by a lone white male who stated he had a bomb. The robber entered the bank and made an oral demand for money, threatening the tellers that he had a bomb and would detonate it if he didn't get money. The robber distributed plastic, grocery style bags to two bank tellers to collect money. The robber also demanded and was given access to the bank vault, where he put a large sum of cash into a black duffle bag that he had brought with him. The robber collected the two plastic bags he had given to the tellers and placed those into the duffle bag. The robber exited the bank, ran across the parking lot and entered a wooded area behind the bank.

Bank employees observed this and passed the information along to responding police officers. A perimeter was set up by law enforcement of the area the robber was observed going and after a comprehensive search, the robber was located in a sewage drainage pipe along with the bag containing the money. The bank recorded a loss of $78,643. The robber was identified as Gregory MAGEE, D.O.B. 08/11/1969.

Subsequent interview and investigation following the arrest of MAGEE revealed that he had driven a black, Cadillac ATS to the robbery and it was located in a park, in Pitcairn, PA, approximately 1 mile from the bank. Also, during this interview with MAGEE, it was revealed that the vehicle was on loan to MAGEE while his (MAGEE's) vehicle was being worked on at #1 Cochran Cadillac in Monroeville, PA. Investigators located the vehicle in Pitcairn and had it towed to Monroeville Police Department.

Investigators then contacted #1 Cochran to inform them of the recovery of their vehicle. Investigators spoke to Service Advisor Zach Depellegrin, who stated that he had dealt with

MAGEE that morning. Depellegrin informed investigators that MAGEE had come in that morning to get service on his vehicle; specifically to get his air filter and cabin filter changed. Depellegrin stated that MAGEE made the appointment through "OnStar" in MAGEE's car. Depellegrin informed MAGEE that the service would take 15-20 minutes, but MAGEE was insisting on a loaner vehicle. MAGEE first requested a Buick sedan, but none were available. MAGEE then requested a light colored Cadillac, but all that was available was black Cadillac ATS. MAGEE accepted and left the dealership.

Depellegrin retrieved all service records associated with MAGEE. It was determined that on March 29, 2016, MAGEE dropped his car off for service and was given a Cadillac ATS as a loaner vehicle. MAGEE maintained the loaner vehicle until April 1, 2016. The bank robbery of the First Niagara Bank in Peters Township on March 31, 2016 falls into this time period and surveillance cameras captured the robber utilizing a dark colored Cadillac ATS.

It was also discovered that MAGEE obtained a loaner from #1 Cochran Buick on August 11, 2016. The vehicle was a dark blue Buick Regal. MAGEE utilized the vehicle for just one day. This falls on the same day that the Citizen's Bank in Beaver County was robbed, where an eye witness observed the robber getting into a dark colored Buick sedan.

Investigators asked for access to MAGEE's vehicle located at #1 Cochran Cadillac. MAGEE's personal vehicle was determined to be a black, 2013 Cadillac ATS, with aftermarket black rims. In comparison to the surveillance videos taken of the getaway vehicle on February 29, 2016, it is believed to be the same vehicle. The vehicle was towed and lodged at the FBI Field Office in Pittsburgh, PA.

During the interview with MAGEE, he stated that he currently resides at 90 Jeremias St. Apt A5, Pittsburgh, PA 15218 and that MAGEE lives at this address by himself. MAGEE reported

having a cellphone with the associated number of **412-628-5975**. No cellphone was recovered when MAGEE was arrested so investigators asked where the phone could be located. MAGEE stated that it was probably in the loaner vehicle. A consent search was conducted, but no phone was located. MAGEE admitted to the bank robbery of the S & T Bank in Monroeville, PA during above referenced interview, but denied any participation in any other robberies.

I also believe that MAGEE may have committed other bank robberies, including one on November 25, 2015, due to similarities in the manner and means of execution, and the requested data would reveal MAGEE's location and thus provide crucial evidence concerning the dates requested. Therefore, the facts cited above are "specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d).

## REQUEST FOR ORDER

The facts set forth in the previous section show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation. Specifically, these items will help the United States to further identify individuals who are responsible for the events described above and to determine the nature and scope of their activities. Accordingly, the United States requests that **AT&T Wireless** be directed to produce all items described in Part II of Attachment A to the proposed Order.

The United States further requests that the Order require **AT&T Wireless** not to notify any person, including the subscribers or customers of the account(s) listed in Part I of Attachment A, of the existence of the Order until further order of the Court. *See* 18 U.S.C. § 2705(b). This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a

provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." *Id.* In this case, such an order would be appropriate because the requested Order relates to an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation, and its disclosure may alert the targets to the ongoing investigation. Accordingly, there is reason to believe that notification of the existence of the requested Order will seriously jeopardize the investigation, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, or notify confederates. *See* 18 U.S.C. § 2705(b)(2), (3), (5). Some of the evidence in this investigation is stored electronically. If alerted to the investigation, the subjects under investigation could destroy that evidence, including information saved to their smart phones.

    The United States further requests that the Court order, this application, and any resulting order be sealed until further order of the Court. As explained above, these documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

    Respectfully submitted,

    SOO C. SONG
    ACTING UNITED STATES ATTORNEY

    _____
    CONOR LAMB
    Assistant U.S. Attorney
    PA ID No. 304874